10-556-cv
Cenzon-Decarlo v. Mount Sinai Hospital

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2010

(Argued: November 10, 2010     Decided: November 23, 2010)

Docket No. 10-0556-cv

CATHERINE LORENA CENZON-DECARLO,

*Plaintiff-Appellant,*

-v.-

MOUNT SINAI HOSPITAL, A NEW YORK NOT-FOR-PROFIT CORPORATION,

*Defendant-Appellee.*[*]

Before:
 PARKER and WESLEY, *Circuit Judges*, and JONES,[**] *District Judge.*

    Appeal from an order of the United States District Court for the Eastern District of New York, entered on January 15, 2010, granting Defendant's Motion to Dismiss.

    AFFIRMED.

        MATTHEW S. BOWMAN, (Steven H. Aden, *on the brief*), Alliance Defense Fund, Washington, D.C., *for Plaintiff-Appellant.*

_____

        [*] The Clerk of the Court is directed to amend the official caption in accordance with this Opinion.

        [**] The Honorable Barbara S. Jones, of the United States District Court for the Southern District of New York, sitting by designation.

Bᴇᴛᴛɪɴᴀ B. Pʟᴇᴠᴀɴ, (Harris M. Mufson, *on the brief*), Proskauer Rose LLP, New York, N.Y., *for Defendant-Appellee*.

---

Pᴇʀ Cᴜʀɪᴀᴍ:

This case calls on us to determine whether 42 U.S.C. § 300a-7(c) implies a private right of action.  As set forth below, we hold that it does not.

## Background

Plaintiff-Appellant Catherina Lorena Cenzon-DeCarlo ("Cenzon-DeCarlo") is an operating room nurse who was hired by Mount Sinai Hospital in 2004.  She asserts that as part of the hiring process, she signed a form given to her by Mount Sinai on which she indicated her unwillingness to participate in abortions, pursuant to a written policy allowing employees to register conscientious objections to that and other procedures.  She also claims that on May 24, 2009 she was compelled by her supervisors to participate in a late-term abortion, suffering serious emotional harm as a result.  When she filed a grievance over this incident, she alleges that her supervisors attempted to coerce her into signing a form indicating future willingness to assist in emergency abortions, despite the absence of such an

exception from the hospital's objection policy.

In July 2009, Cenzon-DeCarlo filed suit against Mount Sinai in the Eastern District of New York, alleging that Mount Sinai had violated her rights under 42 U.S.C. § 300a-7(c) ("Section 300"), sometimes referred to as the "Church Amendment." Passed as part of Pub. L. 93-948 in the wake of *Roe v. Wade*, 410 U.S. 113 (1973), the statute provides that

> [n]o entity which receives a grant, contract, loan or loan guarantee under [certain statutory schemes governing federal health funding] . . . may discriminate in the employment, promotion, or termination of employment of any physician or other health care personnel . . . because he performed or assisted in the performance of a lawful sterilization procedure or abortion, because he refused to perform or assist in the performance of such a procedure or abortion on the grounds that his performance or assistance in the performance of the procedure or abortion would be contrary to his religious beliefs or moral convictions, or because of his religious beliefs or moral convictions respecting sterilization procedures or abortions.

The district court granted summary judgment to Mount Sinai on the ground that Section 300 does not provide a private right of action. Cenzon-DeCarlo timely appealed to this Court.

## Discussion

Section 300 does not explicitly say Appellant has a

right to sue.  Federal courts have inferred private rights of action, but only when there is explicit evidence of Congressional intent:

> [P]rivate rights of action to enforce federal law must be created by Congress.  The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy.  Statutory intent on this latter point is determinative.  Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.

*Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001) (Scalia, *J.*) (internal citations omitted).  However, Appellant is quick to point out that the Supreme Court noted over thirty years ago that it "has never refused to imply a cause of action where the language of the statute explicitly conferred a right directly on a class of persons that included the plaintiff in the case."  *Cannon v. Univ. of Chi.*, 441 U.S. 677, 690 n.13 (Stevens, *J.*) (1979).

Cenzon-DeCarlo contends that Section 300 *explicitly* confers an individual right upon her because Section 214(A) of Pub. L. 93-348, which was codified as the portion of Section 300 in dispute here, bears the heading "Individual Rights."  Alternatively, Cenzon-DeCarlo contends that this

subject heading is evidence of Congress's *intent* to create individual rights.

The text of Section 300 as printed in the United States Code does not contain the label "individual rights" at the passage in question. It is true that the text of the Public Law, rather than that of the Code, is "evidence of laws unless Congress has expressly enacted [the Code title] as positive law." *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 121 n.7 (2d Cir. 2007) (internal quotation marks and citation omitted). However, this "evidence of law[]" is at best only *evidence* of an intent to confer individual rights, not an *explicit* conferral. The interpretive role of the title of a statute is limited to "shed[ding] light on some ambiguous word or phrase in the statute itself." *Whitman v. Amer. Trucking Ass'ns*, 531 U.S. 457, 483 (2001) (citations omitted); *see also United States v. Cullen*, 499 F.3d 157, 163 (2d Cir. 2007); *U.S. ex rel. Thistlethwaite v. Dowty Woodville Polymer, Ltd.*, 110 F.3d 861, 866 (2d Cir. 1997). Consequently, the title alone cannot confer individual rights; the most it could do is provide evidence of Congressional intent to confer them.

Cenzon-DeCarlo finds further evidence of Congressional

intent in statements by Representative John Heinz introducing the language which would become the pertinent portions of Section 300 on the House floor.  While Heinz's floor speech does contain some talk of rights, it is entirely devoid of any reference to private causes of action to enforce those rights.

Appellant's focus on Congressional intent — certainly not explicit here — to confer an individual right upon a class that includes her reflects her strong belief that a remedy *must* follow a right.  While her observation is correct that the Supreme Court did once observe thirty years ago that, at that time, the Court had consistently implied a remedy where a right is found, the Supreme Court's jurisprudence in this area has evolved considerably since then.  We are mindful of a more recent instruction from the High Court that "[t]he judicial task is to . . . determine whether [a statute] displays an intent to create *not just* a private right *but also* a private remedy."  *Sandoval*, 531 U.S. at 286 (emphases added).  *See also Torraco v. Port Auth. of New York and New Jersey*, 615 F.3d 129, 141 (2d Cir. 2010) (Wesley, *J.*, concurring).

While there may be some colorable evidence of intent to

confer or recognize an individual right, there is *no* evidence that Congress intended to create a right *of action*. In the absence of such evidence, we must be mindful of *Sandoval*'s command that "courts may not create [a cause of action], no matter how desirable that might be as a policy matter."  532 U.S. at 286-87.

In *Cannon*, the Supreme Court determined Title IX created an implied right of action but cautioned

> [t]here would be far less reason to infer a private remedy in favor of individual persons if Congress, instead of drafting Title IX with an unmistakable focus on the benefited class, had written it *simply as a ban* on discriminatory conduct by recipients of federal funds *or as a prohibition* against the disbursement of public funds to educational institutions engaged in discriminatory practices.

*Cannon*, 441 U.S. at 690-93 (emphasis added).

The Court later looked to this passage in *Gonzaga Univ. v. Doe*, 536 U.S. 273, 287 (2002) (Rehnquist, *C.J.*).  In that case, the Court refused to find an implied private right of action under the Family Educational Rights and Privacy Act of 1974 ("FERPA"), codified at 20 U.S.C. § 1232g(b).  That statute provides that "[n]o funds shall be made available . . . to any educational agency or institution which has a policy or practice of permitting the release of education

records [to unauthorized entities]." *See Gonzaga*, 536 U.S. at 279.

Cenzon-DeCarlo contends that, while FERPA is *simply* a ban on discriminatory conduct by recipients of federal funds, Section 300 is more than that; it is rights-oriented, similar to Title IX as interpreted by *Cannon*. She argues *Cannon*'s cautionary note does not apply to the statutory language before us.

This cannot be correct. The passage from *Cannon* quoted above expresses reluctance to infer a private remedy from *either* a "ban on discriminatory conduct" *or* a "prohibition against the disbursement of public funds." FERPA in *Gonzaga* presented a prohibition; Section 300 in the case before us presents a ban on conduct. If the "simply as a ban" phrase were, as Cenzon-DeCarlo contends, speaking only of statutes which address federal administrators and direct them to withhold or recover funds, the "or as a prohibition" language would be superfluous.

*Cannon* explicitly warns that language like that of Section 300 does not signal Congressional intent to create a private remedy. We cannot infer from the text before us an implied private right of action. Section 300 may be a

statute in which Congress conferred an individual right without an accompanying right of action. We are not prepared to say that this is the case, and under *Sandoval* we need not do so to affirm the district court's grant of summary judgment. What we do hold today is that Section 300 does not confer upon Cenzon-DeCarlo a private right of action to enforce its terms.

Cenzon-DeCarlo is also not entitled to injunctive relief. When determining whether a statute confers a private right of action, "the same analysis applies independently of the remedy sought by the plaintiff." *Health Care Plan, Inc. v. Aetna Life Ins. Co.*, 966 F.2d 738, 742 (2d Cir. 1992). Where we find that a statute confers a private right of action, "we presume — absent clear congressional direction to the contrary — that 'the federal courts have the power to award any appropriate relief.'" *Id.* at 743 (quoting *Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 71 (1992)). Because we find no indication of Congressional intent to confer a private right of action, injunctive relief would not be an appropriate remedy here.

Appellant has preserved state discrimination claims, which were dismissed without prejudice by the district

court.  While making no statement on the possible merits of such claims, we observe that these and other avenues to potential relief remain open to her.

## Conclusion

The district court's order of January 15, 2010 granting summary judgment in favor of Defendant-Appellee is hereby **AFFIRMED.**